UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOE HAND PROMOTIONS, INC.,

        Plaintiff,

v.                                                       Case No. 12-C-0343

SPEAKEASY GB, LLC, d/b/a SPEAKEASY,
and LYDIA ANN GAJESKI, individually and
as a member and Registered Agent of
SPEAKEASY GB, LLC

        Defendants.

**ORDER ON PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**

Plaintiff Joe Hand Promotions, Inc. brought this action alleging that defendants Speakeasy GB, LLC, d/b/a Speakeasy, and Lydia Ann Gajeski, individually and as a member and registered agent of Speakeasy GB, LLC, knowingly and willfully violated 47 U.S.C. §§ 553 and 605 by unlawfully intercepting and exhibiting the UFC # 112 fight on April 10, 2010. Jurisdiction arises under 28 U.S.C. § 1331. Defendants have failed to appear in this action. The Clerk entered default against the defendants on November 14, 2012. This matter is before me on plaintiff's motion for entry of default judgment and award of damages, attorney's fees and costs. (Dkt. 16.)

**BACKGROUND**

The background facts of this case, except for those relating to damages, are taken from the allegations of plaintiff's complaint and are deemed admitted as a consequence of defendants'

default. *See, e.g., Black v. Lane*, 22 F.3d 1395, 1397 n.4 (7th Cir. 1994). Plaintiff has established that it owned the distribution rights to the UFC # 112 fight program, which was broadcast by closed circuit television or by encrypted satellite signal. Plaintiff then entered into contracts with commercial establishments in Wisconsin to enable them to publicly exhibit the program to their patrons.

Plaintiff expends substantial monies to transmit the broadcast to paying customers. As such, one of plaintiff's investigators visited Speakeasy at 10:06 p.m. on April 10, 2010. (Aff. of Michael J. Pfeifer, Ex. B, Dkt. 17.) The investigator observed two television sets which were both displaying the UFC #112 program. The investigator did not pay a cover charge to enter the bar, and he counted a maximum of 15 individuals in the bar area. He left the Speakeasy at 10:23 p.m.

**LIABILITY**

Plaintiff alleges that defendants violated 47 U.S.C. §§ 553 and 605, but without the benefit of discovery or an admission from defendants plaintiff cannot determine exactly how defendants intercepted its signal (i.e., via coaxial cable or satellite). As plaintiff acknowledges, it may not simultaneously pursue relief under §§ 553 and 605 because the sections target two distinct types of piracy. *See United States v. Norris*, 88 F.3d 462, 468 (7th Cir. 1996) (holding that 47 U.S.C. § 605 governs the interception of programming as it travels through the air, while 47 U.S.C. § 553 governs the interception of cable television programing traveling over a cable network). Plaintiff requests relief under § 605, but cannot demonstrate conclusively that defendants intercepted a satellite signal

2

Case 1:12-cv-00343-WCG   Filed 01/04/13   Page 2 of 7   Document 18

on April 10, 2010. Nevertheless, I conclude that the allegations of the complaint provide sufficient basis to find defendants liable for a violation of § 605.[1]

As a result of defendants' default, they are deemed to have unlawfully intercepted the program and shown it to their patrons and to have done so willfully and for purposes of direct or indirect commercial advantage or private financial gain. *See Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"); *see also Kingvision Pay-Per-View, Ltd. v. Scott E'S Pub., Inc.*, 146 F. Supp. 2d 955, 959 (E.D. Wis. 2001) ("'Willful' as used in these statutes means a 'disregard for the governing statute and an indifference for its requirements.'") (quoting *ON/TV v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985)). "'In addition, the court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct.'" *Garden City Boxing Club, Inc. v. Frezza*, 476 F. Supp. 2d 135, 138 (D. Conn. 2007) (quoting *J&J Sports Prods., Inc. v. Drake*, No. 06cv246 (ILG)(RML), 2006 WL 2927163, at *5 (E.D.N.Y. Oct. 11, 20006)).

In addition, personal liability against Gajeski is appropriate in this case based upon the allegations of the complaint. The complaint alleges upon information and belief that Gajeski was the individual with supervisory capacity and control over the activities occurring at Speakeasy on

---

[1] The complaint states that the broadcast originated via satellite uplink, and was subsequently re-transmitted to cable systems and satellite companies via satellite signal. (Compl. ¶¶ 10, 14.) Plaintiff states that there are multiple illegal methods of intercepting the broadcast, but defendants must have used an illegal satellite receiver, misrepresented their business establishment as a residence, or removed an authorized receiver from one location to a different business location. (Compl. ¶ 14.)

3

April 10, 2010, and that she received financial benefit from the operations of Speakeasy on that night. (Compl. ¶¶ 8-9.) By her default Gajeski also forfeits her ability to contest her personal liability for the violation alleged by plaintiff, as Gajeski is deemed to have had the necessary supervisory control over the interception and received financial benefit from the same. *See J & J Sports Productions, Inc. v. 291 Bar & Lounge*, 648 F. Supp. 2d 469, 473 (S.D.N.Y. 2009) (discussing that individual liability is appropriate where the complaint establishes that the individual had a "right and ability to supervise" the violations, as well as an obvious and direct financial interest in the misconduct).

**DAMAGES**

A claimant entitled to relief under § 605 may elect actual or statutory damages pursuant to § 605(e)(3)(C)(I). Plaintiff has elected statutory damages, which range from a minimum of $1,000 to a maximum of $10,000, in the discretion of the court. 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff also seeks enhanced damages for a willful violation. Section 605 permits enhanced damages of up to $100,000, in the discretion of the court, where the defendant has exhibited disregard for the governing statute and indifference to its requirements. *See, e.g., Kingvision*, 146 F. Supp. 2d at 959-61. Finally, under § 605(e)(3)(B)(iii), plaintiff has requested an award of attorneys' fees and costs in the amount of $1,827.83.

I first turn to the question of what amount of statutory damages is appropriate in this case. There are various ways in which courts have gone about calculating statutory and enhanced damages for violations of § 605:

4

> Some courts have assessed statutory damages using as a yardstick the number of patrons in the establishment viewing the show. *See, e.g., Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 489 (listing cases); *Time Warner Cable v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y.1997) (same). Some courts have awarded a flat sum for each violation. *See, e.g., Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 489-90 (listing cases); *Taco Rapido Rest.*, 988 F. Supp. at 111 (same). A multiplier has been used in cases of willful violations. *See, e.g., Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 491 (recommending for willful violation an additional three times the base statutory damages award for one defendant, an additional four times the award for another defendant, and an additional eight times the award for a third defendant); *Cablevision Sys. Corp. v. Maxie's N. Shore Deli Corp.*, No. CV 88 2834(ASC), 1991 WL 58350, *2 (E.D.N.Y.1991) (awarding an additional amount for willful violation in the amount of five times the initial statutory damages award).

*Kingvision*, 146 F. Supp. 2d at 960. The court in *Kingvision* calculated the statutory damages based upon the rate the plaintiff charged its customers for the right to exhibit the program, which in turn was based upon the maximum fire code occupancy of the building in which the exhibition was to take place.

Here, plaintiff has provided its rate card indicating what it would charge to permit the defendants to show its UFC program based on the maximum capacity of the facility where the event is broadcast. (Rate Card from Joe Hand Promotions, Inc., Ex. A, Dkt. 17.) Because Speakeasy had a posted capacity of 88 people, plaintiff's corresponding standard rate was $1,100. (Aff. of Michael J. Pfeifer, Ex. B, Dkt. 17; Rate Card from Joe Hand Promotions, Inc., Ex. A, Dkt. 17.) Accordingly, the court will award statutory damages of $1,100.

As I have already concluded that defendants' violation was willful within the meaning of the statute, I now turn to the question of what amount of enhanced damages is appropriate. The only guidance the statute itself gives courts in assessing damages for willful violations is that they not exceed $100,000 for violations of § 605 and $50,000 for violations of § 553. 47 U.S.C. § 553(c)(3)(B); 47 U.S.C. § 605(e)(3)(C)(i)(II). In order to arrive at an enhanced damage figure,

5

courts have considered factors such as: (1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge on the night of the event. *Joe Hand Prods. v. Kaczmar*, No. 08-C-2910, 2008 WL 4776365, at *2 (Oct. 29, 2008) (citations omitted). Beyond these factors, "courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense)." *Id*.

Here, there is nothing to suggest that the defendants have pirated in the past. Also missing from the record is any indication of the extent of any ill-gotten gains by the defendants or the actual damages suffered by plaintiff for this act of piracy. Further, defendants do not appear to have advertised the event and the investigator's affidavit indicates he was not required to pay a cover charge. Thus, all of these factors point toward a lower amount of enhanced damages. Speakeasy did not appear to be anywhere near its capacity during the investigator's visit, suggesting that defendants did not receive substantial financial gains as a result of their piracy of the UFC #112 program. In order to deter future violations, the court will impose enhanced damages of $3,300, applying a multiplier of three times the amount of the $1,100 in statutory damages.

## COSTS AND ATTORNEYS' FEES

Finally, I turn to plaintiff's request that I award $1,827.83 in costs and attorneys' fees. Under 47 U.S.C. § 605(e)(3)(B), if a violation of the section is found, attorneys' fees and costs are mandatory. The total hours submitted, multiplied by the hourly rate requested by plaintiff comes to a total of $1,250 in attorneys' fees and $577.83 in costs. Plaintiff's counsel has submitted an

affidavit listing a total of five attorney hours at a rate of $250 per hour. (Aff. of Peter S. Balistreri, Dkt. 17 at 2.) Plaintiff also lists $350 for filing fees and $227.83 for service of process and related fees. Plaintiff's request is reasonable, so the court will award plaintiff $1,827.83 in costs and attorneys' fees.

For the reasons stated above, the court grants plaintiff's motion for judgment by default against the defendants in the amount of $6,227.83. The Clerk is directed to enter judgment accordingly.

Dated this __3rd__ day of January, 2013.

          s/ William C. Griesbach
          William C. Griesbach, Chief Judge
          United States District Court

7

Case 1:12-cv-00343-WCG   Filed 01/04/13   Page 7 of 7   Document 18